**In re the Parental Responsibilities of A.M., a Child,**

and

**Concerning Jessica L. Burton, n/k/a Jessica L. Goebel, and Lawrence Goebel, Petitioners–Appellees,**

and

**Roger Medina and Antonia Medina, Respondents–Appellants.**

No. 09CA1430.

Colorado Court of Appeals, Div. II.

Sept. 16, 2010.

The Marrison Law Firm, M. Patricia Marrison, Robert L. Hunt, John H. Bohlen, Lauren M. Hulse, Colorado Springs, Colorado, for Petitioners–Appellees.

Beltz & West, P.C., Daniel A. West, W. Thomas Beltz, Colorado Springs, Colorado, for Respondents–Appellants.

Opinion by Judge CASEBOLT.

In this parental responsibilities and support action concerning A.M., respondents, Roger and Antonia Medina, the child's paternal biological grandparents, appeal the trial court's order in favor of petitioners, Jessica L. Goebel and Lawrence Goebel, A.M.'s mother and adoptive father, terminating grandparent visitation. We affirm.

## I. Background

In 2005, the trial court entered an allocation of parental responsibility order awarding mother sole residential and decision-making responsibility over A.M., who was born in 1999. The court declined to award parenting time to A.M.'s biological father, who was then incarcerated. As part of its order, the court recognized and commended mother for taking A.M. to visit his grandparents and for encouraging the establishment of a bond between them.

In May 2008, asserting that mother had denied them the regular weekend visitation they had formerly enjoyed with A.M., grandparents moved for an order allowing grandparent visitation under section 19–1–117, C.R.S.2010. In September 2008, the trial court granted the motion and awarded grandparents visitation with A.M. one weekend per month during the day.

In February 2009, mother moved to terminate grandparent visitation. As grounds, she asserted that the parental rights of A.M.'s biological father had been terminated, that her husband had adopted A.M. on February 13, 2009, and that she and her husband believed that termination of further contact with the grandparents would be in A.M.'s best interests. Following an evidentiary hearing, the trial court added the adoptive father as a petitioner and granted the motion.

The court relied upon *In re Adoption of C.A.*, 137 P.3d 318 (Colo.2006), and concluded that, for orders concerning grandparent visitation under section 19–1–117, a presumption must be applied in favor of the parent's decision concerning grandparent visitation, which could be rebutted by grandparents only through clear and convincing evidence

that the parent's visitation decision was not in the child's best interests and, conversely, that the visitation they sought was in the child's best interests. The court determined that grandparents had not met their burden to prove by clear and convincing evidence either that mother and adoptive father's decision to terminate their visitation was not in A.M.'s best interests, or that a continuation of grandparent visitation would be in his best interests.

The court found that A.M. liked to visit with his grandparents, but determined that decisions regarding A.M. should be made by his parents, not his grandparents, and that at his age, it was particularly important for his parents to shield him from any negative influences present at the grandparents' home. The court considered evidence of A.M.'s special needs and disability and concluded that he had difficulty managing the noise and tension present in the grandparents' home, where the paternal uncle also resided with his girlfriend and her children.

The court also specifically relied on the testimony of A.M.'s therapist that he had described to her certain incidents suggestive of drug use or drug activity in the grandparents' home, and that A.M. had not been coached to say so. It further credited mother's testimony that, when she lived in the grandparents' home during her pregnancy with A.M. and the first few months after his birth, she had witnessed drug use by the family, including grandmother, and that, at that time, the child's biological father and uncle were in a gang, an affiliation the grandparents appeared to tolerate.

Finally, the court observed that the grandparents' testimony indicated a refusal to acknowledge any role in or contribution to their son's incarceration, and it was concerned about grandmother's position that it was permissible for her to smoke cigarettes with mother when mother was a pregnant fifteen-year-old based on the justification that no one had any control over mother at that time.

## II. Proper Legal Standard

■ Grandparents first contend that the trial court erred by applying an incorrect legal standard to mother's and adoptive fa-ther's termination motion. They argue that the clear and convincing standard announced in *In re Adoption of C.A.*, and used by the trial court here, applies exclusively to original determinations of a grandparent visitation request. They contend that, because in the September 2008 order, the court had already "found justification for inserting itself into the private realm" of the parents' decision regarding grandparent visitation, the *C.A.* standard is no longer applicable and that the parents' request to terminate or modify the visitation requires the parents to prove, by a preponderance of the evidence, that such termination or modification is in the best interests of the child. Accordingly, they further assert that the trial court improperly placed the burden of proof on them, rather than on mother and adoptive father as the movants. We conclude that the trial court correctly required clear and convincing evidence and properly allocated the burden of proof to grandparents.

### A. Standard of Review

■ Whether a court has applied the correct legal standard to a case presents a question of law that we review de novo. *Freedom Colo. Info. Inc. v. El Paso County Sheriff's Dep't*, 196 P.3d 892, 897 (Colo.2008); *People in Interest of J.R.T.*, 55 P.3d 217, 219 (Colo. App.2002), *aff'd sub nom. People v. Martinez*, 70 P.3d 474 (Colo.2003).

### B. Applicable Law

■ Pursuant to section 19–1–117(4), C.R.S.2010, the court may modify or terminate grandparent visitation rights "whenever such order would serve the best interests of the child." The issue of the proper burden of proof and the party bearing it when the parent seeks to change or stop visitation previously granted to a grandparent under section 19–1–117 presents an issue of first impression.

In *In re Adoption of C.A.*, the supreme court construed the grandparent visitation statute in light of *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), to determine the manner in which the statute should be interpreted and applied to

ensure that parental determinations receive the "special weight" required to satisfy due process. It noted the Supreme Court's reiteration in *Troxel* of the long-accepted principles recognizing fit parents' fundamental right to the care, custody, and control of their children and the presumption that must be accorded to fit parents that they act in the best interests of their children. *C.A.*, 137 P.3d at 324–25. The court then noted the *Troxel* Court's conclusion that, because state intrusion into the private realm of the family to question a parent's child-based decisions is not ordinarily justified or tolerated, a court may not constitutionally override a fit parent's decisions without giving those decisions special weight and identifying special factors that might warrant the interference. *Id.*

The court determined that the *Troxel* requirement of special weight could be implemented in the context of grandparent visitation proceedings through the adoption of the clear and convincing evidence standard. *Id.* at 327. It then instructed that the grandparent must initially rebut the presumption that the parental determination is in the child's best interests and that, once the grandparent meets that burden through clear and convincing evidence, the burden shifts to the parent to adduce evidence in support of his or her decision. *Id.* at 327–28. However, the court clarified that the grandparent must bear the ultimate burden of proof by showing, again through clear and convincing evidence, that the child's best interests will be served only by the visitation the grandparent seeks.

The clear and convincing standard applied to initial requests for grandparent visitation also applies when a nonparent requests an allocation of parental responsibility under section 14–10–123, C.R.S.2010. *See In re Parental Responsibilities of Reese*, 227 P.3d 900, 901 (Colo.App.2010) (concluding that the parental presumption that applied to mother as a fit parent could be rebutted only by findings based on clear and convincing evidence that the grant of decision-making responsibility and parenting time to third-party petitioners was in the child's best interests).

## C. Analysis

In urging that the preponderance of the evidence standard is the correct legal standard to use in proceedings to modify grandparent visitation, grandparents analogize to parental responsibility modifications under sections 14–10–129 and 14–10–131, C.R.S. 2010, and rely on *In re Parental Responsibilities of M.J.K.*, 200 P.3d 1106 (Colo.App. 2008). We conclude that their reliance is misplaced.

In *M.J.K.*, the mother sought to terminate the maternal grandmother's guardianships of her older children and to modify the grandmother's parental responsibilities for her younger children. The maternal grandmother had previously been awarded sole decision-making responsibility and primary care of the younger children. The division in *M.J.K.* determined that the application of the settled statutory standards for terminating guardianships and modifying allocations of parental responsibility, which placed the burden of proof by a preponderance of the evidence on the mother as movant, did not violate her constitutional rights. *M.J.K.*, 200 P.3d at 1112–13. The division declined to extend the parental presumption and the clear and convincing standard of proof to modifications of parental responsibility because the mother had consented to the relinquishment of her role as day-to-day caregiver, she had enjoyed and exercised her fundamental parental rights in the initial adjudication, and the statutory scheme governing modifications of parental responsibility is structured to emphasize the importance of continuity and stability in custody arrangements. *Id.* at 1112.

The same considerations that led the division in *M.J.K.* to reject the heightened standard of clear and convincing proof are not implicated in the grandparent visitation context. As the supreme court stated in *C.A.*, 137 P.3d at 327, "a dispute between parents and grandparents regarding grandparent visitation is not a contest between equals." In the case of grandparent visitation, the parent retains the primary role and no concerns arise regarding the continuity and stability of custodial arrangements. As mother and adoptive father have argued, grandparents

may obtain an order granting them visitation rights under a *statute,* but parents have a fundamental *constitutional* right to the care, custody, and control of their children.

Thus, in the absence of any showing that a parent is unfit, we perceive nothing in a proceeding to modify grandparent visitation to suggest either that the parents' rights are to be given diminished importance or that the grandparents have gained standing equal to the parents by virtue of the exercise of their noncustodial visitation.

At least one other jurisdiction has addressed this issue, and we find support for our conclusion in that source. In *Barrett v. Ayres,* 186 Md.App. 1, 972 A.2d 905 (2009), the Maryland court determined that the same standards applicable in initial determinations of grandparent visitation under that state's statute must be applied to subsequent judicial modifications of existing grandparent visitation orders. In Maryland, grandparent visitation can be ordered only after a threshold showing has been made of parental unfitness or exceptional circumstances. *Id.* at 914.

The court reasoned that when a parent seeks to modify an existing visitation order, the parent's fundamental rights remain paramount. *Id.* at 915. Thus, when a third party opposes the parent's desire to modify visitation, the third party (the grandparent in that case) must make the same threshold showing of parental unfitness or exceptional circumstances. *Id.* The court concluded that when such a showing has not been made, it must be assumed that the modification sought by the parent is in the child's best interests. *Id.*

The *Barrett* court also held that a party must show a material change in circumstances affecting the child's best interests before a motion to modify a previous order can be entertained. *Id.* The court concluded that such a requirement was necessary to avoid relitigation of the same issues already decided and deflect concerns related to issue and claim preclusion. However, the court determined that the materiality requirement is satisfied by evidence that an existing provision concerning visitation is no longer in the child's best interests and that the requested change is in the child's best interests. *Barrett,* 972 A.2d at 915–16.

In applying the foregoing analysis, the *Barrett* court found record support for an alleged deterioration in the mother's relationship with the grandparents, which was sufficient to establish a material change. *Id.* at 916. It further determined that the presumption that the mother's visitation decision was in her daughter's best interests shifted the burden of proof to the grandparents to establish either the mother's unfitness or the presence of exceptional circumstances showing that termination of the grandparents' visitation would adversely impact the child. *Id.* at 917. The court determined that if the grandparents failed to make such a showing, the trial court would be required to grant the mother's motion to terminate the visitation. *Id.*

■ We are persuaded that an approach similar to the *Barrett* court's approach should be employed here. Mother and adoptive father, as the movants, had the burden to present some evidence of a material change in circumstances affecting the child's best interests to support their request to terminate grandparent visitation. This is entirely in line with section 19–1–117(4), which provides that the court may modify or terminate grandparent visitation "whenever such order would serve the best interests of the child." Moreover, it comports with the general notion in Colorado that the party asserting the affirmative of a proposition (here, the termination of previously granted visitation) has the initial burden of going forward, *see People in Interest of S.E.G.,* 934 P.2d 920, 922 (Colo.App.1997) (burden of proof generally rests upon the party who asserts the affirmative of an issue), at least until a presumption arises. *See Krueger v. Ary,* 205 P.3d 1150, 1154–55 (Colo.2009) (a rebuttable presumption shifts the burden of going forward to the party against whom it is raised). But because the presumption that arises in favor of a fit parent's decision concerning grandparent visitation is constitutionally mandated, *see C.A.,* 137 P.3d at 322, 327, as is the clear and convincing standard, *id.,* it is nevertheless appropriate to place the burden of rebutting the presumption by clear and convincing evidence upon grandparents. *See id.*

Here, grandparents acknowledged that the clear and convincing burden of proof would

apply if they moved for a modification that would expand their rights. Moreover, because mother and adoptive father were required to present their evidentiary case first, and provided evidence of a material change in circumstance (a requirement that was met here in view of the parents' marriage, the adoption of A.M., and the reports to the therapist), grandparents were not placed in the position of relitigating the same circumstances that had supported their original request for visitation.

The decisions grandparents cite in support of their argument that the parental presumption does not apply to the modification of visitation are inapposite because they do not specifically concern grandparent visitation. They are also unconvincing because they employ a rationale similar to the division's analysis in *M.J.K.*, which we have already determined is inappropriate for modifications of grandparent visitation. *See Hunter v. Haunert*, 101 Ark.App. 93, 270 S.W.3d 339, 344–45 (2007) (distinguishing *Troxel* and holding that its due process requirements did not apply to the parents' motion to terminate former stepfather's visitation awarded to him when he stood in loco parentis to the child); *Schaffer v. Schaffer*, 884 N.E.2d 423, 428 (Ind.Ct.App.2008) (holding that the parental presumption and special weight accorded to parents in an initial grandparent or third-party visitation proceeding do not apply when the parent seeks to modify a third party's visitation); *Spencer v. Vaughn*, 2008 WL 615443, *8 (Tex.App. No. 03–05–00077–CV, Mar. 6, 2008) (unpublished memorandum opinion) (holding that under the Texas statutory scheme, no presumption is to be applied in favor of the parents who had filed a motion to modify and vacate a stipulated grandparent visitation order).

Accordingly, we conclude that grandparents were held to the proper burden of proof in resisting mother and adoptive father's motion to terminate their visitation and that the record supports the court's determination that they did not meet that burden.

### III. Evidence of Prior Circumstances and Events

■ Grandparents also contend that the trial court erred in admitting evidence that predated the original award of grandparent visitation. We disagree.

### A. Standard of Review

■ We review evidentiary rulings for an abuse of discretion. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000).

### B. Applicable Law

■ When conditions have changed or previously unknown material facts have been discovered, evidence of events occurring before a decree or an award of parental responsibility may be introduced and considered if it is relevant to the issues on which the requested modification is based. *See Ross v. Ross*, 89 Colo. 536, 541–42, 5 P.2d 246, 249 (1931) (evidence relating to mother's conduct prior to the divorce decree was relevant where it shed light on her fitness as a parent), *superseded on other grounds by statute, as stated in In re Marriage of Eckman*, 645 P.2d 866, 867 (Colo.App.1982).

### C. Analysis

Here, mother's description of the grandparents' household both corroborated A.M.'s statements to his therapist (who was initially engaged after entry of the September 2008 order to assist concerning school behavior issues) about the use of drugs there, and illuminated mother's concern about the child's exposure to gang life. Therefore, the evidence was relevant and admissible. Further, evidence of the child's recent difficulties in school, as well as the previously noted evidence of mother's marriage and father's adoption of A.M., established that a change in circumstances had occurred since the original visitation order.

Accordingly, we discern no abuse of discretion in the admission of this evidence.

The order is affirmed.

Judge FURMAN and Judge TERRY concur.