IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 28, 2011 Session

## NEAL LOVLACE and NORMA JEAN LOVLACE
v.
## TIMOTHY KEVIN COPLEY AND BETH COPLEY

**Direct Appeal from the Chancery Court for Hickman County**
**No. 06-128-C      Robbie T. Beal, Judge**

**No. M2011-00170-COA-R3-CV - Filed February 3, 2012**

### SEPARATE CONCURRENCE AND PARTIAL DISSENT

HOLLY M. KIRBY, J., concurring in part and dissenting in part:

I agree with much of the majority's well reasoned analysis in this case. However, in some respects, I would use different reasoning to reach the same result, and so must file this separate concurrence. In some other respects, I disagree with the result reached by the majority and so must partially dissent. These are discussed below.

I agree with the majority's conclusion that the Lovlaces are "grandparents" of the child at issue within the meaning of the grandparent visitation statutes. However, as detailed below, I disagree with some of the majority's discussion of the definition of "grandparent" under the statutes.

I also agree with the majority's conclusion that, given the specific language in Tennessee's grandparent visitation statute, the original consent order in this case was not vitiated by Mr. Copley's adoption of the child. In addition, I agree with the majority's holding that the trial court erred in applying the standard applicable to a visitation dispute between parents when it considered the Lovlaces' petition to modify visitation and the Copleys' petition to terminate visitation, and I concur in the majority's holding vacating the trial court's order. As detailed below, however, I diverge somewhat from the majority in its approach to the standard to be applied on remand.

As to whether the Lovlaces are "grandparents" under Tennessee's grandparent visitation statutes, I agree with the majority's holding that Mrs. Lovlace, as the adoptive parent of the

child's biological parent, fits within the statutory definition of "grandparent" in Section 36-6-306(e)(1), in recognition of Tennessee caselaw stating that adoptive parents enjoy the same rights as biological parents. I also agree that Mr. Lovlace, as the spouse of such a grandparent, is considered a grandparent under Section 36-6-306(e)(2).[1]

However, the majority opinion goes on to include obiter dictum to the effect that the grandparent visitation statute should be construed "expansively" and stating that the fact that the Lovlaces "have enjoyed a close and supportive relationship with the child" factors into the analysis of whether they fit the statutory definition of "grandparent." These assertions do not square with constitutional principles or the language and structure of the grandparent visitation statute.

As noted by the majority, the statutory definition of "grandparent" is prefaced by the phrase "includes, but is not limited to." Clearly this signals that our legislature intended to permit the courts to go beyond the strict confines of the statutory definition. This permits us, for example, to hold that Ms. Lovlace is the equivalent of a "biological grandparent" under Section 36-6-306(e)(1), based on well-settled Tennessee caselaw holding that the relationship between an adoptive parent and child is entitled to the same legal protection as the relationship between a biological parent and child. *See Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995).

Nevertheless, the majority's assertion that the "including, but not limited to" language is a license to interpret the statute expansively is at odds with constitutional principles. Grandparent visitation statutes must be narrowly construed in order to comport with the state and federal constitutions, because they are in derogation of the parents' fundamental constitutional rights. *See, e.g., In Matter of Rupa*, 13 A.3d 307, 317 (N.H. 2010). Thus, while the language in Tennessee's statute permits the court to verge slightly beyond the three enumerated subsections defining "grandparent," the Constitution requires us to do so with great prudence.

In the discussion of whether the Lovlaces are "grandparents under the statute, the majority also includes the following:

> In addition, the record shows that the Lovlaces have enjoyed a close and
> supportive relationship with the child since her birth. The child knows the

---

[1]Section 36-6-306(e)(2) includes the "spouse of a biological grandparent." Tenn. Code Ann. § 36-6-306(e)(2). Mr. Lovlace would come under the grandparent visitation statute only so long as he and Mrs. Lovlace are married; if the Lovlaces divorced or Mrs. Lovlace died, he would not have independent grandparent status.

Lovlaces as her grandparents, and they have acted as grandparents in their care, support, and love for this child. Given the consistent relationship that has existed between the child and the Lovlaces, we conclude that the trial court's defining the Lovlaces as grandparents under the statute was not outside the scope of the statute, and was not otherwise a contravention of the legislative intent.

The majority cites no authority for considering the quality of the Lovlaces' relationship with the child as part of the analysis of whether they meet the statutory definition, and none exists. It appears to be rooted primarily in sentiment, and is at odds with the language and structure of the grandparent visitation statute. Under the structure of the statute, once the court determines that a party fits the definition of a "grandparent," then he or she must present proof that:

> (A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;
>
> (B) The grandparents functioned as a primary caregiver such that cessation of the relationship could . . . occasion physical or emotional harm; or
>
> (C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

Tenn. Code Ann. § 36-6-306(b)(1). Thus, the quality of the grandparents' relationship with the child features prominently in the analysis of whether visitation is necessary to avert the danger of substantial harm to the child. **See also** Tenn. Code Ann. § 36-6-306(b)(2) and (3). In contrast, the statutory definition of "grandparent" says only:

> [T]he word "grandparent includes, but is not limited to:
>     (1) A biological grandparent;
>     (2) The spouse of a biological grandparent; or
>     (3) A parent of an adoptive parent.

Thus, nowhere in the statutory definition of grandparent is there any language indicating that the quality of the relationship is considered in determining whether the petitioners meet the statutory definition. Rather, the structure and language of the statute as a whole show clearly that the court is to first determine whether the petitioners are "grandparents" within the statutory definition. If the court finds that the petitioners do not fit within the statutory

definition of "grandparent," the inquiry goes no further. Only if the court finds that the petitioners are "grandparents" does the court go on to determine "the presence of a danger of substantial harm to the child," explicitly considering whether the child had a "significant existing relationship" with the petitioning grandparents.

Moreover, this kind of bootstrapping jeopardizes the parents' fundamental right to make parenting decisions for their child. Under this dicta in the majority opinion, any third party who "acted as grandparents" would have the right to petition for visitation pursuant to the grandparent visitation statute. This is clearly contrary to the Court's obligation to respect the parents' constitutional right to raise their child as they see fit.

As to the applicable standard, as noted by the majority, Tennessee's grandparent visitation statute does not address the standard to be used in actions to modify or terminate an existing visitation order. Neither party has cited a Tennessee case establishing such a standard, and we have found none. Consequently, it becomes the job of this Court to fashion the appropriate standard.

The majority begins its analysis of this issue with an extended review of the existing standard for modifying a court-ordered custody and visitation arrangement between the child's parents.[2] While the discussion of parent vs. parent actions is not inaccurate, I am concerned that it leaves the reader with the impression that we start with the standard for an action between a child's parents as the baseline and "tweak" it to devise a standard for modifying grandparent visitation. However, the two situations are fundamentally different, as emphasized by our Supreme Court in *Smallwood v. Mann*, 205 S.W.3d 358 (Tenn. 2006). A grandparent visitation action "is not a contest between equals." *Stacy v. Ross*, 798 So. 2d 1275, 1280 (Miss. 2001); *Smallwood*, 205 S.W.3d at 361-63. As stated by the Maryland appellate court:

> In a situation in which both parents seek custody, each parent proceeds in possession, so to speak, of a constitutionally-protected fundamental parental right.
>
> * * *
>
> Where the dispute is between a fit parent and a private third party, however, both parties do not begin on equal footing. . . . The parent is asserting a fundamental constitutional right. The third party is not.

---

[2]The references to child *custody* disputes sprinkled throughout the majority's analysis are particularly inapposite. This case involves visitation only, and cases in which a third party, such as a grandparent, seeks or obtains custody involve wholly different considerations.

***McDermott v. Dougherty***, 869 A.2d 751, 770 (Md. 2005), *abrogated on grounds not affecting quoted excerpt by **In re Ta'Niya C.**,* 8 A.3d 745, 755-57 (Md. 2010), and ***In re Rashawn***, 937 A.2d 177, 194 (Md. 2007). This principle should be the baseline starting point for any discussion of the standard in a grandparent visitation case. It should remain paramount in every part of the analysis of modification of the grandparents' visitation, termination of visitation, and even contempt issues.

In addition, while the majority includes a lengthy footnote listing cases from other jurisdictions addressing modification of an existing grandparent visitation order, it surprisingly considers none of them in the analysis in the body of the majority opinion. This despite the fact that the majority acknowledges that the standard enunciated by the Tennessee Supreme Court in ***Hawk v. Hawk***, 855 S.W.2d 573 (Tenn. 1993), requiring proof of substantial harm in order to grant grandparents visitation with their grandchild over the parents' objection, has been explicitly adopted by numerous other states, either in caselaw, by statute, or both. ***See, e.g., E.H.G. v. E.R.G.***, 73 So. 3d 614, 626-28 (Ala. Civ. App. 2010); ***Roth v. Weston***, 789 A.2d 431, 447 (Conn. 2002), *abrogated as to third party custody but not visitation by **Fish v. Fish**,* 939 A.2d 1040, 1043 (Conn. 2000); ***Beagle v. Beagle***, 678 So. 2d 1271, 1274-76 (Fla. 1996); ***Brooks v. Parkerson***, 454 S.E.2d 769, 772-74 (Ga. 1995); ***Neal v. Lee***, 14 P.3d 547, 550 (Okla. 2000); ***In re Custody of Smith***, 969 P.2d 21, 30-31 (Wash. 1998). ***See also*** Daniel R. Victor and Ken L. Middleditch, *Grandparent Visitation: A Survey of History, Jurisprudence, and Legislative Trends Across the United States in the Past Decade,* 22 J. Am. Acad. Matrim. Law 391, 404 n.47 (2009) (citing states whose statutes require a finding of harm before visitation can be granted to third party, citing twelve states besides Tennessee). Moreover, even in states where the caselaw on grandparent visitation or the state's statute uses other phraseology such as "extraordinary circumstances" or "detriment to the child," courts have recognized that this is the effective equivalent of a "substantial harm" standard. ***See McDermott***, 869 A.2d at 796. Thus, rather than re-inventing the wheel, I would consider the standards adopted in other jurisdictions in devising Tennessee's standard for modification of an existing grandparent visitation order.

In addition, the experience of our sister states as reflected in cases on modification of grandparent visitation offers much to inform the analysis of this Court, and the trial court on remand, in considering the facts of this particular case. ***See, e.g., In re A.M.***, 251 P.3d 1119, 1124 (Colo. App. 2010) (adoption of child by stepparent as material change in circumstances); ***Lucero v. Hart***, 907 P.2d 198, 203-04 (N.M. Ct. App. 1995) (considering animosity between parents and grandparents as a significant factor); ***Wilson v. McGlinchey***, 811 N.E.2d 526, 530-31 (N.Y. 2004) (considering deterioration of relationship between parents and grandparents after original visitation order, effect on best interest analysis); ***Kareem W. v. Family Focus Adoption Servs., Inc.***, No. V-10651/08, 2009 WL 2751076, at

*11; 901 N.Y.S.2d 900, at *11 (N.Y. Fam. Ct. Aug. 12, 2009) (consideration of effect of grandparent visitation on new adoptive family unit).

In short, in light of the fact that determining the standard for modification of an existing grandparent visitation order presents an issue of first impression in Tennessee, I would consider the analysis of courts in other states on this question.

Moving on to the substantive issue, it is noteworthy that some jurisdictions either do not require a parent to prove a change in material circumstances in order to seek modification of the grandparents' visitation, or find that "the desire of a fit parent to modify visitation with a third party . . . presents a material change in circumstances." *See Barrett v. Ayers*, 972 A.2d 905, 915-16 (Md. Ct. Spec. App. 2009); *In re Kaiser*, No. 04C09, 2004 WL 3090224, at *6 (Ohio Ct. App. Dec. 30, 2004). Other courts require the parents "to present some evidence of a material change in circumstances affecting the child's best interests to support their request to terminate grandparent visitation." *In re A.M.*, 251 P.3d at 1123. *See also Scott v. Scott*, 19 P.3d 273, 275 (Okla. 2001). The majority notes that one state specifies by statute that the change in circumstances must have either occurred after the original order was entered or have been unknown at that time, citing Mich. Comp. Laws § 722.27b(11). I find no state, by statute or caselaw, that requires the parents to show, as the majority in this case does, that the changed circumstances were not reasonably anticipated when the underlying order was entered.

I agree with the majority that the movant seeking modification or termination of court-ordered grandparent visitation should be required to make a threshold showing of a material change in circumstances. As noted in *Barrett v. Ayers*, "the court does not want feuding parties to have the ability to relitigate the same issues which it has already decided . . . ." *Barrett*, 972 A.2d at 915. It also "comports with the general notion . . . that the party asserting the affirmative of a proposition (here, the termination of previously granted visitation) has the initial burden of going forward." *In re A.M.*, 251 P.3d at 1123 (parenthetical in original). *See also Ingram v. Knippers*, 72 P.3d 17, 22 (Okla. 2003).

However, in requiring a proof of a material change in circumstances, I would not hold that it must be shown that the changed circumstances "were not reasonably anticipated" when the original grandparent visitation order was entered. At least where, as here, the grandparents did not play a primary or quasi-parental role in the child's life, continuity and stability for the child is not implicated. *See In re A.M.*, 251 P.3d at 1122 ("In the case of grandparent visitation, the parent retains the primary role and no concerns arise regarding the continuity and stability of custodial arrangements.") Moreover, numerous circumstances that are entirely foreseeable at the time of the original order may compel modification or termination of the grandparent visitation order, such as the marriage of a single parent, adoption of the

-6-

child by a step-parent, continued or worsening animosity between the parents and the grandparents, relocation of the parents, or the age and maturation of the child.

Once the threshold showing of changed circumstances has been met, we must determine the applicability of the decision of the United States Supreme Court in ***Troxel v. Granville***, 530 U.S. 57, 120 S. Ct. 2054 (2000), decided after the 1993 decision of our Supreme Court in ***Hawk v. Hawk***, and after the 1997 enactment of Tennessee's grandparent visitation statutes. In a fragmented, plurality opinion interpreting the Fourteenth Amendment of the United States Constitution, five Justices in ***Troxel*** held that a fit parent is accorded a presumption that the parent acts in the child's best interests. ***Troxel***, 530 U.S. at 68, 120 S. Ct. at 2061. A four-Justice plurality held that if a fit parent's decision on grandparent visitation "becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." ***Troxel***, 530 U.S. at 70, 120 S. Ct. at 2062. ***See Ingram***, 72 P.3d at 23-25 (Kauger, J., dissenting) (scholarly analysis of ***Troxel***).

***Troxel*** involved an original petition for grandparent visitation, rather than an action to modify an existing visitation order. ***Troxel***, 530 U.S. at 61, 120 S. Ct. at 2057. State courts since then have divided on whether actions to modify or terminate existing court-ordered grandparent visitation are subject to ***Troxel***'s presumption in favor of the parents or its "special weight" requirement. ***See Ingram***, 72 P.3d at 25-26, n.11 (Kauger, J., dissenting) (citing cases). The Supreme Court's actions on appeals following ***Troxel***, either denying or granting certiorari in cases appealed to the Supreme Court, seem to indicate that the Court views the "special weight" requirement, and the presumption that the parent acts in the child's best interests, as applicable in actions to modify or discontinue court-ordered grandparent visitation. ***Id.*** at 26 (Kauger, J., dissenting).

The substantial harm requirement in ***Hawk v. Hawk***, and codified in Tennessee's grandparent visitation statutes, appears to be a higher standard than the "special weight" standard adopted by the plurality in ***Troxel***. ***See Troxel***, 530 U.S. at 96, 120 S. Ct. at 2076 (Kennedy, J., dissenting) (citing ***Hawk v. Hawk***, 855 S.W.2d 573, 580 (Tenn. 1993)). I agree with the majority's conclusion that the statutory requirement of "substantial harm" in Tennessee's grandparent visitation statutes should apply in modification proceedings, and in particular, to the Copleys' petition to terminate the Lovlaces' visitation. The grandparents are entitled only to an amount of visitation sufficient to avert the danger of substantial harm to the child, and only for so long as such visitation is necessary to avoid the danger of substantial harm.

However, as codified in Tennessee's statutes, the "substantial harm" standard is limited to the question of whether grandparent visitation should be ordered by the court at all. ***See*** Tenn. Code Ann. § 36-6-306(b)(1). If that question is answered in the affirmative, and the court finds that visitation is in the child's best interests, then the statute states only that the

court may order "reasonable" visitation. *See* Tenn. Code Ann. § 36-6-306(c)). On the issues other than substantial harm, is *Troxel* applicable? Surprisingly, the majority in this case does not even address whether the requirements under the federal constitution as enunciated in *Troxel* are applicable.

Notably, this Court has cited the *Troxel* "special weight" standard in connection with the details of the visitation, such as the amount of it. *See Redman v. Redman*, No. E2001-02730-COA-R3-CV, 2002 WL 1609741, at *5-6 (Tenn. Ct. App. July 22, 2002). As to the best interests of the child and the particulars of any visitation schedule, after reviewing the caselaw in our sister states, I would find that the constitutional imperatives under *Troxel* remain applicable to these issues, and would find a rebuttable presumption that the parents' preferences and decisions are in the child's best interest and should be accorded "special weight" in the trial court's analysis. *See, e.g., In re A.M.*, 251 P.3d at 1123-24; *Barrett*, 972 A.2d at 915-16.

In sum, in an action to modify or terminate grandparent visitation, I would hold that the movant has the burden of showing a material change in circumstances that affects the child's best interests. The movant need not show that the change could not be anticipated at the time of the original order. In all aspects of the modification or termination proceedings, regardless of which party is the movant, I would find a rebuttable presumption that the parents' preferences and decisions are in the child's best interests, and accord special weight to them. Explicitly, if visitation is continued, I would accord special weight to the parents' preferences in fashioning a visitation schedule. In all modification proceedings, the grandparents would retain the continuing burden of showing that denial of visitation would present a danger of substantial harm to the child, because the grandparents may only receive the amount of court-ordered visitation that is necessary to prevent the danger of substantial harm to the child.

In light of this holding, I would vacate the trial court's order on the contempt issues as well. Certainly the Copleys were obliged to obey the original consent court order on the Lovlaces' visitation, even if they disagreed with it, until the trial judge modified or rescinded it. However, the trial judge appeared to approach the entire proceedings as comparable to a visitation dispute between divorced parents. As set forth above, the two are wholly different, and I would find that the trial court's perspective on contempt was necessarily skewed by viewing the proceedings through the wrong prism. Moreover, even in the contempt proceedings, under *Troxel*'s interpretation of the requirements of the federal constitution, I

would apply a rebuttable presumption that the parents' decisions are in the child's best interests.[3] For those reasons, I would vacate the contempt order as well as the order awarding attorney fees, along with the orders on the Lovlaces' modification petition and the Copleys' petition to terminate visitation.

Finally, a discussion of the facts and allegations in this case is in order. Referring to the continuing visitation friction between the Lovlaces and the Copleys, the trial court below found that "the relationship of the parties ha[s] degenerated to the point where they are no longer able to work together." In light of this, the trial court modified the visitation order "to secure the grandparents the regular visitation they are supposed to have under the Agreed Order and to remove the discretion from" the Copleys. The trial court found that it was in the child's best interests "to mandate certain specific times because the grandparent visitation was an agreement fairly bargained on between the parties." This demonstrates clearly that the trial judge assumed a role familiar to many trial courts from handling numerous visitation disputes between a child's battling parents. This may be appropriate between parents, where both parties have a constitutional right to parent their child and an obligation to respect each other's parenting rights. Indeed, Tennessee's statutes provide that custody may be changed from one parent to the other, based on the custodial parent's attempts to alienate the child from the other parent.

However, such an approach is inappropriate in this case. As discussed at length above, grandparent visitation is viewed from a completely different perspective, in that it "is not a contest between equals." *Stacy*, 798 So. 2d at 1280. The effect on the child of hostility between the parents and grandparents, even if the source of the hostility lies with the parents, is a statutory factor in determining whether visitation should be granted in the first place. *See* Tenn. Code Ann. § 36-6-307(4). It should also be a factor in any modification proceeding, to determine whether court-ordered visitation should continue. *See E.H.G.*, 73 So. 3d at 630 ("forced grandparent visitation should not be used as a means for ending family disharmony"); *Lucero*, 907 P.2d at 204 ("The existence of animosity between a child's parents and the grandparents, although not conclusive, is a significant factor . . . ."); *Wilson*, 811 N.E.2d at 530 ("Although enmity between parents of a child may not affect a parent's visitation rights, grandparent visitation implicates different equitable concerns.") (internal citations omitted). Here, the evidence indicates that the child in this case has been placed in the center of the family conflict between the Lovlaces and the Copleys. Such tension obviously has injurious effects on the child, and also may create stress that adversely impacts the Copleys' ability to parent their child. *See Rigler v. Treen*, 660 A.2d 111, 115 (Pa. Super. 1995). These considerations necessarily must factor into the trial court's best interest

---

[3]Again, the majority does not address whether the constitutional requirements in *Troxel* are applicable in contempt proceedings.

determination. Moreover, the deleterious effect of continued litigation on the child and her parents should be considered. *See Troxel*, 503 U.S. at 75, 120 S. Ct. at 2065 (". . . the burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent . . . become implicated.' ")

In addition, the Copleys indicated that, after the adoption of the child by Mr. Copley, the Copleys desired to establish a new nuclear family unit, with Mr. Copley as father, free of outside interference. The Copleys believe that the child's continued visitation with the Lovlaces runs counter to this goal. The Copleys' legitimate desire should be considered by the trial court as well. *See Rigler*, 660 A.2d at 115 (biological parent felt that the court-ordered grandparent visitation frustrated "her efforts to establish a new family unit" after stepfather's adoption of the child, and felt that, with continued court-ordered visitation, their new family unit "will never be able to function normally, without outside interference."). The Copleys' aspiration to form a new family unit free of outside interference is at odds with the Lovlaces' natural desire that the child know the extended family of her biological father, and their wish to continue their loving relationship with the child. However, the State, in the form of the trial judge, must resist the urge to become "super-parent;" as noted in *Troxel*, because "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73, 120 S. Ct. at 2064. As fit parents, the Copleys' values and vision for their family should be respected in all stages of the litigation below.

For these reasons, I respectfully file this separate concurrence and partial dissent.

_____
HOLLY M. KIRBY, JUDGE

-10-