2012 COA 63

**In re the Parental Responsibilities Concerning B.R.D., a Child, and Concerning Phillip K. Decker and Sherry M. Decker, Petitioners–Appellees,**

**and**

**Adam Gordon, Respondent–Appellant.**

**No. 10CA2386.**

Colorado Court of Appeals,
Div. VII.

April 12, 2012.

Michael L. Garcia, Pueblo, Colorado, for Petitioners–Appellees.

Stephan E. Uslan, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge BERNARD.

¶ 1 This appeal concerns a dispute between parents of a boy and a couple with whom the boy is living. At one point, the boy's parents and the couple entered into an agreement that gave the couple sole decision-making responsibility, primary residential caretaking, and majority parenting time. Father, Adam Gordon, subsequently asked a court to give him liberal and expanded parenting time and a share of decision-making authority. The couple, Phillip K. and Sherry M. Decker, opposed father's request.

¶ 2 We resolve this dispute by recognizing that, under the law, father's status as a parent creates a presumption that he is a fit parent who will act in the boy's best interests. To rebut this presumption, the couple must show that (1) it would not be in the boy's best interests to modify the order in the manner that father requests; and (2) it would be in his interests for the existing order to continue.

¶ 3 The trial court here did not accord father, a fit parent, the benefit of this presumption, nor did it require the couple to rebut the presumption or to show that it would be in the boy's best interests to maintain the existing order. Thus, we vacate the court's order awarding sole decision-making responsibility, primary residential caretaking, and majority parenting time to the couple. We remand for further proceedings to be conducted under the standards described in this opinion.

## I. Background

¶ 4 Father and mother, Yen Hong Dang, are the biological parents of the boy, who was born in September 2005. Mother gave him up for adoption. He was placed with the couple shortly after his birth. In January 2006, mother filed a petition stating that she wished to relinquish her parental rights to the couple.

¶ 5 Several months later, father, who had not known of mother's pregnancy, contacted her and learned of the boy's birth. When he acknowledged his paternity and objected to the couple's proposed adoption of the boy, mother changed her mind. She asked the court to dismiss the relinquishment petition and have the boy returned to her. The couple responded by asking the court to terminate mother's and father's parental rights.

¶ 6 In June 2007, mother and father entered into a stipulation with the couple. They memorialized their stipulation in consensual permanent orders that allocated parental responsibilities by awarding (1) sole parental and decision-making responsibility to the couple; and (2) some parenting time to mother and father during the week, plus two weekend days per month. Mother and father explicitly reserved the right to ask the court to modify the allocation of parental responsibilities in the permanent orders. The court also ordered mother and father to pay monthly child support to the couple.

¶ 7 Over time, mother, father, and the couple came closer to sharing parenting time. In December 2008, mother moved to increase her parenting time and to provide her with more decision-making authority. She stated that she provided daily care for the boy and her relationship with him had matured.

¶ 8 In September 2009, father also asked the court to modify the orders concerning parenting time and parental responsibility. He alleged that circumstances had changed: he had moved to Colorado to be closer to the boy. He sought to modify the orders to give him more time with, and a larger say in decisions concerning, the boy. He stated that additional time together would deepen the bond between them. He added that it would be in the boy's best interests to grant this request.

¶ 9 In October 2010, the court held a three-day evidentiary hearing to resolve mother's and father's requests for expanded parenting time and decision-making authority. At the

hearing's conclusion, the court found that the boy was "deeply" attached to father, mother, the couple, and the couple's child. Although the court expressed some concern that the parties would not encourage the boy to build on his relationships with one another, it also found that they could all put the child's needs ahead of their own.

¶ 10 Relying on *In re Parental Responsibilities of M.J.K.*, 200 P.3d 1106 (Colo.App. 2008), the court then . concluded that the proper legal standard to resolve mother's and father's motions was the "endangerment" standard found in sections 14–10–129 and 14–10–131, C.R.S.2011. The court added that it had

considered whether a preference should be given to [father and mother] under the line of cases decided since *Troxel v. Granville* [530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ] . . . was issued by the United States Supreme Court. The [c]ourt finds that the [consensual permanent order] approved by the [c]ourt . . . was not a temporary order, although [father and mother] reserved the right to modify it. Therefore, the [c]ourt concludes that the interests of [father and mother] under *Troxell* have been adequately considered by the [c]ourt in reaching its decision.

[The division of the court of appeals] in . . . *M.J.K.* held that subsequent legal proceedings after the initial proceeding are to be determined by the statutory standards for modifying allocations of parental responsibility and parenting time (which still allows the [c]ourt to consider the relationship between [father and mother] and [the child] ) . . . . The Colorado Supreme [C]ourt in the case of *In the Matter of D.I.S.* [249 P.3d 775 (Colo.2011) ] has granted *certiorari* to revisit the holdings set forth in . . . *M.J.K.* However, unless the Colorado Supreme Court establishes a different standard than applied by the [c]ourt in this [o]rder, the [c]ourt finds that the interests of [father and mother] have been appropriately considered.

¶ 11 Employing the standard from *M.J.K.*, the court found that the environment the couple provided did not endanger the boy or impair his emotional development. The court added that changing this environment, as requested by father and mother, would not be in the boy's best interests, and that such a change would not provide him with any advantages that would outweigh the harm that the change was likely to cause.

¶ 12 The court decided that the couple should be the boy's primary residential custodians and that they should exercise sole decision-making authority concerning him. The court recognized that father, mother, and the couple had been sharing parenting time. But because father and mother lived in Denver and the couple lived in Penrose, "the current residences . . . make[ ] that schedule impossible." As a result, the court ordered that the boy would live with the couple during the week and live with father and mother on alternate weekends.

¶ 13 Only father appeals this order.

## II. Analysis

¶ 14 Father contends that the trial court applied the wrong standard, which did not accord him the presumption that he is a fit parent acting in the best interests of the boy. We agree because the holding in the division's opinion upon which the court based its decision to apply that standard, *M.J.K.*, was recently rejected by our supreme court in *In re D.I.S.*, 249 P.3d 775, 781–82 (Colo.2011). As a result, we vacate the court's order awarding sole decision-making responsibility, primary residential caretaking, and majority parenting time to the couple. We remand for the court to conduct further proceedings consistent with the guidance we provide below.

### A. Standard of Review

¶ 15 Allocating parental responsibilities is a matter within the sound discretion of the trial court, *In re Marriage of McSoud*, 131 P.3d 1208, 1214 (Colo.App.2006), and when there is record support for the trial court's findings, its resolution of conflicting evidence is binding on review. *In re Marriage of Hatton*, 160 P.3d 326, 335 (Colo.App. 2007). However, whether a court has applied the correct legal standard presents a question of law that we review de novo. *In re*

*Parental Responsibilities of A.M.*, 251 P.3d 1119, 1121 (Colo.App.2010).

### B. Pertinent Legal Principles

#### 1. Modification Statutes

¶ 16 This appeal requires us to apply statutes governing modifications of orders allocating decision-making responsibility and parenting time.

¶ 17 Section 14–10–131 establishes the standard that a court must employ when modifying orders concerning decision-making responsibility. Under this statute, a court may not modify an order allocating decision-making responsibility unless (1) the court is presented with facts that arose after the order was entered or were unknown at that time; (2) these facts show that there have been changes to the circumstances of the child or of the person who has been allocated the authority to make decisions about the child; and (3) it is necessary to modify the order to serve the child's best interests. § 14–10–131(2), C.R.S.2011.

¶ 18 This statute also states that, in applying this standard, there is a presumption that the prior order allocating decision-making responsibility will remain in effect unless, as pertinent here, maintaining the status quo would endanger the child's physical health or significantly impair his emotional development, and any advantages that would result from making the change would outweigh the harm caused by the change. § 14–10–131(2)(c), C.R.S.2011; *see In re Marriage of Newell*, 192 P.3d 529, 534 (Colo.App. 2008) (applying statute).

¶ 19 Section 14–10–129 provides the standard that a court must use when modifying an order granting parenting time rights. A court may not modify an existing order in a manner that *substantially* alters parenting time *and* changes the person with whom the child primarily resides unless circumstances have changed in a way that makes such modification necessary to further the child's best interests. § 14–10–129(2), C.R.S.2011.

¶ 20 This statute also provides that, in applying this standard, there is a presumption that the prior order shall be retained unless the "present environment endangers the child's physical health or significantly impairs the child's emotional development," and it is likely that the advantages generated by the proposed change will outweigh the potential harms. § 14–10–129(2)(d), C.R.S. 2011; *see Hatton*, 160 P.3d at 331.

¶ 21 These statutes generally establish a three-step analytical process for applying the standards that they create. First, there is a presumption that prior orders should remain in effect. Second, to overcome that presumption, the court must find that there is evidence showing that the status quo endangers the child and that a modification of the prior order will create advantages that outweigh any harm caused by the proposed modification. Third, the court must determine whether the proposed modification is in the child's best interests. *See Hatton*, 160 P.3d at 331.

¶ 22 In this case, because neither person in the couple is one of the boy's parents, and because father is one of his parents, we must next determine whether that difference in the parties' status has an effect on the general analytical process.

#### 2. Effect of Status of Persons as Parents or Non–Parents on the Modification Statutes

##### a. Basic Concepts

¶ 23 We begin this stage of our analysis by recognizing an important principle: parents have a fundamental interest, protected by the Due Process Clause, in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. at 70, 120 S.Ct. 2054 (plurality opinion).

¶ 24 A fit parent is presumed to act in the best interest of his or her child, and a parent's decisions concerning his or her child must be accorded special weight. *Id.* "When a court decision will effectively eliminate or weaken familial bonds by terminating parental rights, or denying custody, parents must receive fundamentally fair procedures." *People in Interest of C.L.S.*, — P.3d —, ——, 2011 WL 5865898 (Colo.App.2011)(citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

¶ 25 Several Colorado appellate decisions have addressed how a court should address a conflict between a parent and another person over the custody of a child. We glean the following concepts from those cases that are important to our analysis:

1. In a dispute between a fit parent and a non-parent, there is a presumption that the parent has a first and prior right to custody of his or her child. This presumption may be rebutted by evidence establishing that the child's best interests are better served by granting some parental rights to the non-parent. *See In re Custody of C.C.R.S.*, 892 P.2d 246, 256 (Colo.1995).

2. When a fit parent has custody of a child, the *Troxel* presumption that a parent's decisions concerning his or her child are in the child's best interests is, as pertinent here, given "special weight" by requiring proof of "special factors" that justify interference with those decisions. *See In re Adoption of C.A.*, 137 P.3d 318, 326 (Colo.2006)(grandparent visitation).

3. In order to grant responsibilities to a non-parent over the objection of a fit parent, a court must find, by clear and convincing evidence, that such an order is in the child's best interests based on special factors that justify the order. *See In re Parental Responsibilities of B.J.*, 242 P.3d 1128, 1135 (Colo.2010).

4. A fit parent who has relinquished custody of a child and agreed to a court order placing the child with a non-parent guardian is nonetheless entitled to the presumption that his or her decisions about the child's custody are in the child's best interests. Thus, unless the guardianship order contains express limitations, a parent may move to terminate the guardianship and re-claim custody of the child. The guardian bears the burden of proving, by a preponderance of the evidence, that terminating the guardianship is not in the child's best interests. *See D.I.S.*, 249 P.3d at 779.

b. *M.J.K. and D.I.S.*

¶ 26 *M.J.K.* held that

where a parent's role as day-to-day caregiver of a minor is relinquished through contested or uncontested judicial proceedings and with no indication by the court that the relinquishment was intended to be temporary, the parent has enjoyed or exercised his or her fundamental rights. We further hold that subsequent application of the statutory standards for terminating guardianships or modifying allocations of parental responsibility, which standards certainly allow a court to consider the relationship between the biological parent and the child, does not violate the parent's constitutional rights. To hold otherwise would effectively afford a parent who relinquishes his or her day-to-day parenting responsibilities through judicial processes a substantial, if not automatic, right to terminate a guardianship or modify an allocation of parental rights with no regard for the perhaps significant impact on his or her children.... [S]uch a result would contradict Colorado's statutory scheme, which carefully balances a parent's fundamental rights against the significant interests of his or her children in a safe and stable environment.

*M.J.K.*, 200 P.3d at 1112.

¶ 27 The supreme court rejected this holding in *D.I.S.* "We disagree that the fundamental liberty interest recognized in *Troxel* and its progeny are inapplicable when parents seek to terminate a guardianship established by their consent." *D.I.S.*, 249 P.3d at 781. Thus, the supreme court was "persuaded ... that the *Troxel* presumption must prevail over *any* competing presumption in favor of an *established custodial environment*, including guardianships." *Id.* at 784 (emphasis added).

C. Application of Pertinent Legal Principles to This Case

¶ 28 There is an important difference between father and the couple that controls the outcome of this appeal. Father, as the boy's parent, has a constitutionally protected interest in the boy's care, custody, and control, and he is presumed to act in the boy's best

interests. As non-parents, the couple does not have a constitutionally protected interest in the boy's care, custody, and control, and they are therefore not entitled to a presumption that they act in the boy's best interests.

¶ 29 When we read *Troxel, C.C.R.S., C.A., B.J.,* and *D.I.S.* together, we are persuaded that this difference alters the general analytical process for modifying parental decision-making or parenting time orders. We do so recognizing that we must weigh (1) the constitutional presumption in favor of father's decisions against the legislature's intent in enacting the modification statutes, *see C.A.,* 137 P.3d at 327; and (2) that same constitutional presumption against the boy's interest in maintaining a relationship with the couple, *see id.*

¶ 30 We also recognize that, ordinarily, the party seeking a modification has the burden of proving that the statutory factors justifying the change are present. *In re Marriage of Davis,* 43 Colo.App. 302, 304, 602 P.2d 904, 905 (1979). However, as *D.I.S.* makes clear, that burden shifts from a parent to a non-parent to protect the parent's due process rights. *D.I.S.,* 249 P.3d at 786 ("We are persuaded ... that the *Troxel* presumption and the court's statutory role in considering what is in the child's best interests can be accommodated through the guardian bearing the burden of proof ...."); *see also C.A.,* 137 P.3d at 327 ("Colorado's [grandparent visitation] standard should turn upon a presumption and burden of proof in favor of parental determinations that also takes into account the child's interest in maintaining the grandparent/grandchild relationship.").

¶ 31 We conclude that *Troxel, C.C.R.S., C.A., B.J.,* and *D.I.S.* alter the general analytical process in the following four ways.

¶ 32 First, rather than presuming that the existing order remains in effect, the court must give "special weight" to father's request to modify them. *See D.I.S.,* 249 P.3d at 787 ("the trial court must give 'special weight' to the parents' decision to terminate the guardianship"); *In re Parental Responsibilities of Reese,* 227 P.3d 900, 903 (Colo.App. 2010)("[W]hen a non-parent seeks an allocation of parental responsibilities contrary to the wishes of a parent, the court may not allocate parental responsibilities to the non-parent unless it ... accord[s] 'special weight' to the parent's determination of the best interests of the child."). This means that there is a presumption in favor of modifying the orders at father's request. *See B.J.,* 242 P.3d at 1132.

¶ 33 Second, the court must give the couple an opportunity (1) to rebut this presumption by showing that the proposed modification is not in the boy's best interests and that the present allocation of parental responsibilities does not endanger him; and (2) to prove that the present allocation of parental responsibilities is in the boy's best interests. *See id.* Naturally, father is entitled to present evidence in support of the proposed modification.

¶ 34 Under the circumstances present here, this means that:

1. In order to rebut the presumption in favor of father's request to modify the allocations of parenting time and decision-making responsibility in the existing order and establish that the proposed modification is not in the boy's best interests, the couple must show that

   • there are no facts that have arisen since, or were unknown when, the existing order was entered that show a change has occurred in their circumstances or the boy's circumstances that would make father's proposed modification "necessary to serve the child's best interests," *see* §§ 14–10–129(2), 14–10–131(2); and

   • the boy's present environment does not endanger his physical health or impair his emotional development and any harm likely to be caused by father's proposed modification would not be outweighed by the advantages of the proposed modification, *see* §§ 14–10–129(2)(d), 14–10–131(2)(c).

2. In order to show that the present allocation of parental responsibilities is in the boy's best interests, the couple must show that the existing allocation gives "paramount consideration to the [boy's] physical, mental, and emotional

conditions and needs" by applying the factors found in section 14–10–124(1.5), C.R.S.2011.

¶ 35 Third, relying on *D.I.S.*, we conclude that the couple must satisfy their evidentiary burdens by a preponderance of the evidence. We are aware that *B.J.* held that the clear and convincing evidence standard applied to decisions granting a non-parent parental responsibilities over the objection of a parent who *has custody* of a child, and we note that a consensual abdication of parental rights under section 14–10–123, C.R.S.2011, does not rise to the level of a *formal and permanent relinquishment* or equate to *a termination* of the parent-child relationship, *see L.L. v. People*, 10 P.3d 1271, 1277–78 (Colo. 2000).

¶ 36 However, father and mother initially consented to an order vesting the couple with sole decision-making authority and giving them primary residential custody. Thus, analogously to the guardianship arrangement in *D.I.S.*, father and mother in this case agreed to transfer significant legal authority to non-parents—the couple. As a result, the preponderance standard approved in *D.I.S.* should likewise govern here. *See In re Parental Responsibilities of E.S.*, 264 P.3d 623, 627 (Colo.App.2011)(explaining differences in burdens of proof between *B.J.* and *D.I.S.*).

■ ¶ 37 Fourth, if the court denies father's request and continues the present allocation of parental responsibilities to the couple, it must make findings of fact identifying the special factors on which it relies. *See B.J.*, 242 P.3d at 1132. These special factors are found in sections 14–10–124(1.5) (allocation of parenting time and decision-making responsibility), 14–10–129(2) (modification of parenting time), and 14–10–131(2) (modification of decision-making responsibility).

¶ 38 These four conclusions lead us to further conclude that the trial court erred because it did not accord father's request to modify the order the presumption that it was in the boy's best interests, and the court did not require the couple to show that father's request to modify the order was not in the boy's best interests. In doing so, we decline to follow *M.J.K.*, the case upon which the trial court placed much emphasis.

¶ 39 *D.I.S.* raises serious doubt about the continuing vitality of *M.J.K.* In making this observation, we recognize that the trial court did not have the benefit of the supreme court's decision in *D.I.S.* when it ruled, although the trial court noted that a petition for a writ of certiorari had been granted in that case.

¶ 40 Therefore, relying on *D.I.S.*, we do not see a practical difference between a parent transferring custody to a non-parent by way of a guardianship and a parent transferring custody to a non-parent through an order allocating parental rights. Although *D.I.S.* dealt with the termination of a guardianship, we have already concluded that its rationale extends to requests to modify allocations of parental responsibilities in situations involving parents and non-parents. Indeed, *D.I.S.* makes clear that "the *Troxel* presumption must prevail over *any* competing presumption in favor of an *established custodial environment*, including guardianships." *D.I.S.*, 249 P.3d at 784 (emphasis added).

¶ 41 Moreover, courts in other states have held that, when a parent requests that an order allocating parental rights to a non-parent be modified, the parent must be accorded the presumption that he or she is acting in the child's best interests. *See Davis v. Weinbaum*, 843 So.2d 290, 293 (Fla. Dist.Ct.App.2003) (reaffirming principle in custody modification proceedings that custody should be denied to the natural parent only when such an award will, in fact, be detrimental to the welfare of the child); *Harris v. Smith*, 752 N.E.2d 1283, 1288–89 (Ind.Ct.App.2001)(declining to place concerns about the stability of a child's environment over the parent's presumptive right to custody and holding that the constitutionally based parental preference may not be ignored in a custody modification proceeding); *Heltzel v. Heltzel*, 248 Mich.App. 1, 638 N.W.2d 123, 136 (2001)(in a proceeding where fit mother sought to change her child's established custodial environment with grandparents, requirement that she prove the change was in the child's best interests violated her fundamental liberty interest in

raising her child); *Jordan v. Jackson,* 876 A.2d 443, 453 (Pa.Super.Ct.2005) (presumption favoring natural parents continues to apply in modification proceedings and requires third-parties having custody rights pursuant to a court order to rebut the parent's prima facie right to custody).

¶ 42 We are aware that mother and father seek to modify a long-term arrangement under which the couple, with mother's and father's consent, have assumed a significant measure of control and care of the boy, and that they have strong bonds with him. However, we perceive nothing within the circumstances of this case that distinguishes it from *D.I.S.* or would otherwise call for an elevation of the presumption favoring established custodial environments over the *Troxel* presumption. A contrary holding would essentially transform the existing order allocating parental responsibilities into an admission or declaration that mother and father were no longer fit or capable of making decisions in the child's best interests. As the supreme court recognized in *D.I.S.,* that result (1) would be logically inconsistent with their initial decision to place the child in the couple's care for his well-being; and (2) would discourage other parents in difficult situations from placing their children temporarily with a willing third party to enable them to take the steps necessary to create an appropriate custodial environment. *D.I.S.,* 249 P.3d at 787.

¶ 43 Our holding requires that we remand this case to the trial court to make new findings of fact under the standards we describe in this opinion. These standards are significantly different from the *M.J.K.* standard upon which the trial court previously relied. For example, they cloak father's modification request with a presumption that *M.J.K.* did not provide, and they allocate the burden of proof to the couple, which *M.J.K.* did not require. Therefore, we conclude that, in making its findings on remand, (1) the trial court may rely on the existing record; and (2) the court shall provide the parties with an opportunity to present additional relevant information.

### III. Additional Contentions

¶ 44 Father raises two additional issues. First, he contends that the trial court abused its discretion by appointing a parental responsibilities evaluator, even though the evaluator was endorsed by the couple as a witness for a hearing on mother's motion to modify the order allocating parental responsibilities.

¶ 45 The evaluator previously completed an evaluation, and the couple later asked the court to reappoint him to update the report. Father objected to the new appointment, arguing that the evaluator's earlier recommendations and testimony as an expert witness on the couple's behalf demonstrated that he was biased in their favor. However, the couple were entitled to call the evaluator to testify, *see Hatton,* 160 P.3d at 329, and he was statutorily required to make a recommendation concerning the allocation of parental responsibilities for the boy, *see* § 14–10–127(7)(a)(IV), C.R.S.2011. Thus, the trial court may consider this evidence on remand because it was properly admitted; father cross-examined the evaluator; and he had an opportunity to present evidence to rebut the evaluator's opinion. *See In re Marriage of Schulke,* 40 Colo.App. 473, 475, 579 P.2d 90, 92 (1978).

¶ 46 Second, he argues that the trial court abused its discretion by ignoring the testimony of a child and family investigator and the boy's therapist that declining to modify the existing order allocating parental responsibilities would impair his emotional development. Because we vacate the trial court's order and remand for further proceedings in which the court must reweigh the evidence as we have directed above, we decline to address this issue.

¶ 47 The trial court's order denying father's request to modify the existing allocation of parental responsibilities and allocating sole decision-making responsibility, primary residential caretaking, and majority parenting time to the couple is vacated. The case is remanded for further proceedings consistent with this opinion. The existing order

allocating parental responsibilities shall remain in effect pending new orders.

RUSSEL and HAWTHORNE, JJ., concur.