24CA0385 Peo in Interest of MM 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0385
Arapahoe County District Court No. 22JV30234
Honorable Victoria Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.M. Child,

and Concerning M.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE NAVARRO
Dunn and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Ron Carl, County Attorney, Erinn Walz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, M.M. (mother) appeals the juvenile court's judgment allocating parental responsibilities for her child, M.M., to S.G., a kinship placement. We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services (Department) opened a voluntary case with the family after mother expressed homicidal ideations toward the child and suicidal statements while allegedly under the influence of alcohol.  The Department subsequently filed a petition in dependency and neglect after learning about mother's additional medical concerns; continued concerns about her being under the influence; and concern that she was minimizing the circumstances and behaviors that led to the Department's involvement.  The child was placed with kin, where he remained throughout the case.

¶ 3    The juvenile court adjudicated the child dependent and neglected.  The court adopted a treatment plan for mother.

¶ 4    The guardian ad litem later moved for an allocation of parental responsibilities (APR) in favor of the kinship placement.  After a two-day evidentiary hearing, the court determined that it was in the

1

child's best interests to remain with the kinship placement. The court granted sole decision-making authority and primary residential custody to the kinship placement.

¶ 5    The court granted mother four hours per week of supervised parenting time at her expense. In doing so, the court additionally found that mother's parenting time was not to be expanded nor her supervision level be decreased until she had (1) established documented sobriety for a minimum of six months; (2) consistently attended and meaningfully engaged in therapy as recommended by her therapist for a minimum of six months; (3) consistently attended family time with the child for a minimum of six months; (4) complied with the components of her treatment plan; and (5) complied with the restrictions on communications detailed in the APR decision.

¶ 6    Mother appeals the court's judgment.

## II.    Analysis

### A.    Standard of Review and Applicable Law

¶ 7    When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the legislative

purposes of the Children's Code. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. Those purposes include:

- securing for each child the care and guidance, preferably in their own home, that will best serve the child's welfare and the interests of society;

- preserving and strengthening family ties whenever possible, including improving the home environment;

- removing a child from the custody of their parents only when the child's welfare and safety or the protection of the public would otherwise be endangered, and for the courts to proceed with all possible speed to a legal determination that will serve the child's best interests; and

- securing for any child removed from the custody of their parents the necessary care, guidance, and discipline to assist the child in becoming a responsible and productive member of society.

§ 19-1-102(1)(a)-(d), C.R.S. 2024.

¶ 8     The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which

the child's best interests can be served.  *J.G.*, ¶ 19.  Thus, the court must allocate parental responsibilities in accordance with the child's best interests.  *Id.*; *see* § 19-3-507(1)(a), C.R.S. 2024.

¶ 9    The Children's Code does not prescribe any specific factors the juvenile court must consider in making its decision.  *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).  A court may consider the best interests factors set forth in the Uniform Dissolution of Marriage Act (UDMA), § 14-10-124(1.5), C.R.S. 2024, as long as the court does not exclusively rely on them and the court's focus remains on the protection and safety of the child, not on the "custodial interests" of the parents.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13; *see also L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1390 (Colo. 1996).

¶ 10    Allocating parental responsibilities is a matter within the juvenile court's sound discretion.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review.  *Id.*  But whether the court applied the correct legal standard is a question of law we review de novo.  *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

4

## B. Analysis

¶ 11  Mother first argues the juvenile court's judgment unduly prohibits her from petitioning the domestic relations court for a modification until certain conditions are met. We reject this argument because the judgment does not include any language that restricts or prohibits her ability to petition the domestic relations court for a modification.

¶ 12  Mother next contends that, by placing conditions around her ability to modify parenting time, the court's order "effectively introduced the best interests-standard from the Children's Code into a proceeding governed by the UDMA."

¶ 13  But this case does not stem from the UDMA. Rather, it is a proceeding under the Children's Code as a result of the filing of a petition in dependency and neglect. Moreover, following entry of the APR judgment, the dependency and neglect case was closed and certified into the domestic relations court. Nothing in the APR judgment prevents a domestic relations court from determining what is in the child's best interests and modifying the APR based on the circumstances before it. In fact, the juvenile court properly

ordered that any modification to the APR should occur under section 14-10-131, C.R.S. 2024.

¶ 14     Mother also argues that, even assuming the juvenile court considered the child's best interests under the UDMA, the court erred because "any determination about the child's best interests under the UDMA is premature." We disagree.

¶ 15     The record shows the juvenile court properly looked to the best interests standard in the Children's Code, and it appears the court also considered the best interests standards contained within the UDMA. In particular, the court found that the child had been with the kinship placement throughout the case, the kinship placement was providing for the child in a safe and stable home, stability was in the child's best interests, and it was in the child's best interests to have permanency. Considering the best interests standard under the UDMA is appropriate so "long as the focus is on the protection and safety of the child." *H.K.W.*, ¶ 13.

¶ 16     Finally, mother briefly argues that the court should have afforded her more liberal parenting time with the child because she had made progress in her treatment plan. In support, she asserts that she had regularly attended therapy, had completed a dual

diagnostic evaluation and substance use evaluation, had maintained contact with caseworkers and attended visits at the Department, and had obtained housing and employment.

¶ 17 Yet the court found that mother was unfit and had not substantially complied with her treatment plan. And the court was concerned that the issues that originally brought the case before it had not changed.

¶ 18 The record shows that most of mother's assertions of progress in her treatment plan are either contrary to or unsupported by the record. The record, including testimony from the caseworker, therapist, and mother herself, shows that mother's attendance at therapy — as recently as three months prior to the APR hearing — was inconsistent. And mother was not always forthcoming with her therapist. While mother had periods of relative consistency in urinalysis (UA) testing during the case, the permanency supervisor testified that, in the three months prior to the APR hearing, mother's UAs were significantly inconsistent. The caseworker and permanency supervisor also testified mother had reported multiple relapses on alcohol and had relapsed as recently as a month prior to the APR hearing. Testimony from the caseworker, permanency

supervisor, and mother's therapist indicated mother had repeatedly violated protection orders between her and the kinship placement and had done so as recently as the day before the APR hearing. And while mother testified that she had housing and employment, she never provided verification of either to the Department.

¶ 19 Because the record supports the juvenile court's findings, we will not disturb them.

## III.   Conclusion

¶ 20 The judgment is affirmed.

JUDGE DUNN and JUDGE GOMEZ concur.