24CA0012 Peo in Interest of LW 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0012
El Paso County District Court No. 21JV701
Honorable Diana K. May, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.W., a Child,

and Concerning N.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Richman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Kenneth R. Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dependency and neglect proceeding, N.W. (mother) appeals the juvenile court's judgment allocating parental responsibilities for her child, L.W., to L.W.'s paternal grandparents. We affirm.

## I.    Background

¶ 2    The El Paso County Department of Human Services (Department) filed a petition in dependency and neglect after the child's older half-sibling reported inappropriate sexual contact by J.W. (father).  Father was ordered to not have any contact with minors.

¶ 3    The child initially remained with mother but was placed into foster care when the child disclosed that her father continued to be in the home in violation of court orders.  The child was placed in multiple foster homes over a period of around six months, then briefly with paternal grandparents, before being returned to mother.

¶ 4    Mother initially entered into a deferred adjudication, but the child was later adjudicated dependent and neglected.  The juvenile court adopted a treatment plan that required, in relevant part, mother to provide (1) protective parenting and (2) a safe and stable living environment.

¶ 5     The guardian ad litem later moved for an allocation of parental responsibilities (APR) in favor of paternal grandparents.  After a hearing, the court determined it was in the child's best interests to be placed with paternal grandparents.  The court granted paternal grandparents permanent custody and sole decision-making responsibility, but also ordered regular parenting time with mother.  Mother appeals.

## II.     Discussion

¶ 6     Mother argues the juvenile court erred when it entered an APR in favor of paternal grandparents.  Mother also contends the juvenile court erred by finding she had not substantially complied with all components of her treatment plan and was unfit.  We disagree.

### A.     Standard of Review and Applicable Law

¶ 7     When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the legislative purposes of the Children's Code.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  Those purposes include:

- securing for each child the care and guidance, preferably in their own home, that will best serve the child's welfare and the interests of society;

- preserving and strengthening family ties whenever possible, including improving the home environment;

- removing a child from the custody of their parents only when the child's welfare and safety or the protection of the public would otherwise be endangered, and for the courts to proceed with all possible speed to a legal determination that will serve the child's best interests; and

- securing for any child removed from the custody of their parents the necessary care, guidance, and discipline to assist the child in becoming a responsible and productive member of society.

§ 19-1-102(1)(a)-(d), C.R.S. 2024.

¶ 8    The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *J.G.*, ¶ 19. Thus, the court

must allocate parental responsibilities in accordance with the child's best interests. *Id.*; *see* § 19-3-507(1)(a), C.R.S. 2024.

¶ 9    Still, parents maintain a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 68 (2000). The Supreme Court recognized that a fit parent who is adequately caring for his or her child is presumed to act in the child's best interests. *Id.* at 68-69.

¶ 10    The Children's Code does not prescribe any specific factors the juvenile court must consider in making its decision. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).

¶ 11    Allocating parental responsibilities is a matter within the juvenile court's sound discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review. *Id.* However, whether the court applied the correct legal standard is a question of law we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

¶ 12    The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and

conclusions to be drawn from it, are matters within the court's discretion. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

## B. Analysis

¶ 13 Mother argues the juvenile court reversibly erred when it entered an APR removing the child from mother's custody and placing the child with paternal grandparents. Mother further asserts that she substantially complied with all components of her treatment plan and argues that the evidence did not support the juvenile court's finding that she was unfit. We disagree.

¶ 14 The juvenile court found an APR to paternal grandparents was "in the overall best interest of [the child] to reside with her [paternal] grandparents at this point in time." Specifically, the court found paternal grandparents were supportive of mother's relationship with the child, while the court did not believe mother had encouraged the relationship between the child and paternal grandparents. *See* § 19-1-102(1)(b). And the court found paternal grandparents had "demonstrated a loving affection, putting [the child's] needs first" and were attendant to her medical and emotional needs. Notably, mother does not challenge these findings.

¶ 15    The record supports the court's findings.

¶ 16    The caseworker testified that the paternal grandparents were ready and willing to meet the child's medical needs, while the record alternatively reveals that mother either delayed getting or did not seek necessary dental and medical care for the child. The paternal grandparents and caseworker testified that the child needed extensive dental work when the Department became involved in the family and appeared to be in pain from the dental issues, and that mother delayed getting treatment for the child's dental needs for about a year after the case was open. Paternal grandfather also testified that the child had an infected ingrown toenail for which he requested mother make the child an appointment at least three times, but mother never did.

¶ 17    The caseworker additionally testified paternal grandparents had shown they would be able to meet the child's emotional and educational needs, while concerns remained about mother's ability to meet those needs. The caseworker testified the child has a learning disability and neurological delays that placed her in the vulnerable category. The caseworker and paternal grandparents testified they had concerns about mother's ability to meet the

child's emotional and mental health needs, especially given that the child's recommended Applied Behavior Analysis (ABA) therapy was not yet in place at the time of the APR hearing. The caseworker testified it appeared the child spent a lot of her time at mother's home alone in her room while mother met with father outside of the home, which caused the child's inappropriate behaviors at school to escalate. The caseworker alternatively testified that when paternal grandparents were more involved with the child, the concerning behaviors in school decreased.

¶ 18    Additionally, the caseworker testified there were no safety concerns with paternal grandparents, while the record reveals that mother had not successfully addressed protective parenting concerns. The caseworker testified she had concerns about mother's ability to be protective given that mother adamantly did not believe the allegations made by the child's half-sibling, nor did mother believe that a prior sexual offense, which father had admitted to and been adjudicated for, had occurred. The caseworker further testified mother was not willing to consider the mere possibility that something inappropriate had occurred. True, paternal grandparents testified they did not wholly believe the

allegations made by the child's half-sibling. Yet they further testified, despite that, they were willing to maintain supervision and protective oversight during the child's visits with father. The caseworker testified that there were no safety concerns about paternal grandparents because they were open to the "what if." Alternatively, the caseworker maintained she had concerns mother would allow father to return to the home if the case was dismissed and it was only Department oversight in the case that was preventing that from occurring.

¶ 19 Mother argues her treatment plan did not require her to agree with the sexual contact allegations and we agree. However, the treatment plan was designed for mother to become a protective parent, and the court found being a protective parent required her to consider the possibility that inappropriate conduct had occurred and act in a protective capacity with regard to the child and father's contact.

¶ 20 Mother additionally argues there was insufficient evidence supporting the court's finding that she was unfit and, therefore, under *Troxel* she was entitled to the presumption that she acted in her child's best interests. *Troxel*, 530 U.S. at 68. However, the

parental presumption may be rebutted when there is clear and convincing evidence that justifies alternative actions. *In Interest of Baby A,* 2015 CO 72, ¶ 24. An order adjudicating a child dependent and neglected overcomes the presumption. *People in Interest of N.G.,* 2012 COA 131, ¶ 33. A parent's liberty interest in the care, custody, and control of their child can also be overcome if evidence shows that it would be in the child's best interests to be placed with a third party. *Baby A,* ¶ 25; *see also In re Custody of C.C.R.S.,* 892 P.2d 246, 256 (Colo. 1995).

¶ 21 Based upon the evidence presented to the juvenile court regarding the unaddressed medical and mental health needs of the child, the juvenile court found that mother had not complied with her treatment plan objectives and was unfit. The court also found that based on the child's vulnerability, she needed to have someone who is protective of her at all times, and that mother was "unwilling to acknowledge the need for that protective capacity over [the child]." Considering these findings, the court granted the APR to paternal grandparents.

¶ 22 We conclude that the juvenile court's findings have sufficient record support, and we will not disturb its legal conclusion.

### III.   Disposition

The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE RICHMAN concur.