24CA0274 Peo in Interest of KLC 09-26-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0274
Larimer County District Court No. 22JV30133
Honorable Joseph D. Findley, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.L.C., a Child,

and Concerning M.A.,

Appellant.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GOMEZ
Tow and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 26, 2024

---

William Ressue, County Attorney, Nicole Liley, Assistant County Attorney, Fort Collins, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for K.L.C.

Jenna L. Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, M.A. (mother) appeals the juvenile court's judgment allocating parental responsibilities for K.L.C. (the child) to her maternal grandparents. We affirm in part, reverse in part, and remand the case with instructions.

## I.    Background

¶ 2    The Larimer County Department of Human Services received multiple referrals concerning the then-twelve-year-old child and her older sister (who is not a subject of this appeal).  At that time, school staff reported that the child had engaged in self-harming behaviors and had disclosed physical abuse by mother and her husband (who is not the child's father).  The child also disclosed that mother's husband had sexually abused her.  After meeting with a caseworker, mother agreed to a safety plan in which she would refrain from using any physical punishment and would ensure that her husband didn't have any contact with the child.

¶ 3    However, after receiving additional referrals and confirming that mother continued to allow her husband to see the children, the Department filed a petition in dependency and neglect.  The court entered a protective order that initially allowed both mother and her

husband to have supervised visits with the children. But it later amended the order to require that mother's visits be therapeutic and to prohibit mother's husband from having any contact with the children.

¶ 4 The juvenile court adjudicated the children dependent and neglected. Thereafter, a home study under the Interstate Compact on the Placement of Children was approved, and the children were placed with their maternal grandparents in Texas. The court also adopted a treatment plan for mother that required her to, among other things, address mental health and substance abuse issues, provide a safe home, and participate in family time. About a week after her treatment plan was adopted, mother and her husband moved to West Virginia. They later moved to Ohio.

¶ 5 The Department moved for an allocation of parental responsibilities (APR) for both children to maternal grandparents. Mother didn't object to an APR as it pertained to the child's sister and, thus, the juvenile court granted an APR as to her. The court then held a contested hearing regarding an APR for the child. After considering the evidence and taking the matter under advisement, the court granted an APR for the child to maternal grandparents.

## II.    Applicable Law and Standard of Review

¶ 6    When a juvenile court adjudicates a child dependent or neglected, the court is vested with "extensive and flexible dispositional remedies." *People in Interest of A.M.D.*, 648 P.2d 625, 639 (Colo. 1982); *see also* § 19-3-508(1), C.R.S. 2024. Among these remedies is placing the child in the legal custody of a relative "under such conditions as the court deems necessary and appropriate." § 19-3-508(1)(b).

¶ 7    When allocating parental responsibilities in a dependency and neglect proceeding, a juvenile court must consider the legislative purposes of the Children's Code. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 12. The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *People in Interest of J.G.*, 2021 COA 47, ¶ 19. Thus, while the Children's Code doesn't prescribe any specific factors a court must consider in making an APR decision in a dependency and neglect proceeding, a court must allocate parental responsibilities in accordance with the child's best interests. *A.S.L.*, ¶ 12; *see also People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).

¶ 8     A juvenile court must also determine that compelling reasons exist not to return the child to their parents before entering an APR. *See People in Interest of C.M.*, 116 P.3d 1278, 1283 (Colo. App. 2005) ("Under the permanency statute, the department must establish a compelling reason why it is not in the child's best interests to return home before a trial court may award permanent custody of the child to a nonparent."). And, although a court isn't required to find that a parent is unfit before allocating parental responsibilities, a parent's unfitness could be a compelling reason not to return a child home. *People in Interest of M.D.*, 2014 COA 121, ¶ 43.

¶ 9     Allocating parental responsibilities is a matter within the sound discretion of the juvenile court, and when there is record support for the court's findings, its resolution of conflicting evidence is binding on review. *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. However, whether a court has applied the correct legal standard presents a question of law that we review de novo. *Id.*

## III. Analysis

### A. Fit Within a Reasonable Time

¶ 10    Mother contends that the juvenile court abused its discretion by allocating parental responsibilities to maternal grandparents because she could've become fit within a reasonable time and, thus, the APR wasn't in the child's best interests. We discern no error.

¶ 11    As a threshold matter, we note that during the contested APR hearing, mother never argued that an APR was not in the child's best interests because she would become fit within a reasonable time and the child could return to her. Thus, because mother didn't specifically make this argument, the juvenile court didn't have the opportunity to address it. *See Berra v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo. App. 2010) (to preserve an issue for appeal, it must be "brought to the attention of the trial court" and the court must be "given an opportunity to rule on it").

¶ 12    In any event, even if mother had preserved this specific argument, we would discern no error for several reasons.

¶ 13    First, although a juvenile court must find that a parent cannot become fit within a reasonable time before it may terminate parental rights, *see* § 19-3-604(1)(c)(III), C.R.S. 2024, no such

finding is required before a court may allocate parental responsibilities to a family member. In fact, while parental unfitness "clearly constitutes a compelling reason not to return a child home," parental deficiencies less serious than unfitness may give rise to a compelling reason not to return the child home when considered in light of the child's physical, mental, and emotional conditions and needs. *C.M.*, 116 P.3d at 1283. Thus, the fact that a parent may become fit in a reasonable time is not dispositive of whether an APR is in the child's best interests, particularly if there are other compelling reasons not to return a child to the parent.

¶ 14 Second, while not required, the juvenile court found that mother was unfit at the time of the APR hearing because she remained "unable to provide for the physical, emotional, and mental needs of the child." And, although the court didn't make any specific findings about mother's compliance with her treatment plan, there is no evidence in the record to show that she had made significant progress on any of her treatment plan objectives with the exception of consistently attending the virtual therapeutic visits. The caseworker testified that mother hadn't engaged in any therapy or completed a mental health assessment, had been inconsistent

6

with her sobriety monitoring, hadn't secured safe and stable housing on her own, hadn't acknowledged the impact of her husband's presence on the child, and hadn't done anything to alleviate the Department's concerns about her lack of protectiveness.

¶ 15    Third, the juvenile court's findings show that it considered the child's best interests in determining that there were compelling reasons to not return the child to mother. Specifically, the court found that the child had challenges that required "particular attention" and was receiving the support and stability she needed while living with maternal grandparents in Texas. The court also found that regardless of the contested nature of the allegations made against mother's husband, the child had "strong reactions to his presence indicating stress and fear." And, although the court acknowledged that mother had "spacious living conditions" to accommodate the child, it was still concerned that mother was living with her husband because of the "ongoing fears of an extraordinary nature expressed by the child" in regard to him. Based on these findings, the court determined that an APR to maternal grandparents was in the child's best interests.

¶ 16    The record supports these findings and conclusions.  The caseworker testified that the child has a genetic disorder; is blind in one eye; and needs a lot of support, including life skills services as well as occupational, physical, speech, and mental health therapy. The caseworker also testified that the child was doing much better behaviorally while living with maternal grandparents and credited the child's progress to the consistency and stability provided in their home.  The caseworker further testified that when the child initially alleged that mother's husband had sexually abused her, mother called her a "liar," which caused the child to "feel that trauma again."  The caseworker said that although the child would become dysregulated and upset when mother's husband appeared on video or when mother talked about him during therapeutic visits, mother hadn't done any work to process the impact of or develop an understanding about the past trauma experienced by the child.  Mother didn't testify, and nothing in the record indicates, that she was planning to stop living with her husband at any point in the near or even distant future.  And ultimately, the caseworker opined that an APR to maternal grandparents was in the child's

best interests because the child needed the consistency and stability that mother wasn't able to provide.

¶ 17 Although mother points to her testimony that the child had recently expressed a desire to return to her as evidence that the APR was not in the child's best interests, mother also admitted that the child only expressed that desire after mother stated that she wished the child could come home and the child said that she "wished the same thing." Conversely, the caseworker testified that when she asked the child open-ended questions about her wishes, the child indicated she wanted to stay with maternal grandparents. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence.").

¶ 18 Accordingly, because the juvenile court's findings and conclusions are supported by the record, and because the court applied the correct legal standards, we discern no error in its determination that an APR to maternal grandparents was in the child's best interests.

## B. Limitation of Family Time

¶ 19 Mother also contends that the juvenile court improperly limited her family time in its judgment granting the APR. We agree, in part, with this contention.

¶ 20 In her brief, mother asserts that "it [would have been] in the child's best interests to have liberal and frequent [family] time with [mother]" and implies that the APR judgment doesn't allow such family time. But she doesn't explain how the family time orders should've been different or what, in her view, would've constituted "liberal and frequent" family time. And the juvenile court allocated mother "supervised telephone and video contact" with the child, which was substantially similar to the virtual family time mother had exercised throughout the case. In fact, the court appears to have lowered the level of required supervision for mother's family time — the APR judgment allows for family time that is supervised by maternal grandparents instead of requiring that the visits be therapeutic. Thus, to the extent that mother argues the court improperly limited her family time by allowing only virtual supervised contact, we are not persuaded.

¶ 21 Additionally, mother points out that she was "desirous of having a provision . . . that would have allowed [her] and maternal grandparents to modify the custody order without returning to court," and she implies that the juvenile court disregarded that request. But the court's APR judgment plainly states that the "parties may add, delete, or change these terms so long as they agree in writing." And, because the APR judgment was certified into a domestic relations action, nothing prevents mother from moving for a modification of family time in the district court. *See C.M.*, 116 P.3d at 1283 (custody orders entered in a dependency or neglect proceeding "are a plan for permanency, subject to change as warranted by the best interests of the child"); *see also* § 14-10-129(1)(a)(I), C.R.S. 2024 (allowing a district court to modify family time "whenever such order or modification would serve the best interests of the child"). Thus, we are not persuaded by this argument either.

¶ 22 Nonetheless, we agree with mother's argument that the juvenile court erred by "providing that all [of mother's] visits [would be] at the discretion of [maternal] grandparents." In general, a court must make decisions about family time and may not delegate

11

this function to others. *See People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005); *see also In re Marriage of Hatton*, 160 P.3d 326, 334 (Colo. App. 2007) (the trial court "erred in delegating to father discretion to determine whether mother could exercise any [family] time").

¶ 23    Here, the juvenile court ordered that mother "may" have supervised contact with the child but that "the final decision regarding [the] duration [of that contact] shall be with [maternal grandparents.]" In other words, the court delegated the decision of when and if mother could exercise family time to maternal grandparents. And, although divisions of this court have noted that delegation of family time decisions may be permissible in cases where the evidence indicates that the parents are willing and able to cooperate, *see In re Marriage of Tibbetts*, 2018 COA 117, ¶ 25, in this case, the court didn't make any findings about the parties' ability to cooperate or otherwise justify its order delegating family time decisions. Moreover, the record indicated that the parties didn't always get along.

¶ 24    Therefore, we conclude that the court erred in delegating maternal grandparents the discretion to determine whether and when mother could exercise her family time.

## IV.    Disposition

¶ 25    The family time provision of the judgment is reversed, and the case is remanded for the juvenile court to allocate family time without delegating decisions regarding mother's family time to maternal grandparents.  The judgment is affirmed in all other respects.

JUDGE TOW and JUDGE KUHN concur.