25CA2201 Peo in Interest of DY 06-04-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2201
Fremont County District Court No. 24JV30031
Honorable Kaitlin B. Turner, Judge

The People of the State of Colorado,

Appellee,

In the Interest of D.Y., a Child,

and Concerning S.F.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

Eric Bellas, County Attorney, Sean Biddle, Assistant County Attorney, Canon City, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, S.F. (mother) appeals the judgment terminating her parent-child legal relationship with D.Y. (the child).  We affirm.

I.    Background

¶ 2    In May 2024, the Fremont County Department of Human Services received a report that the then-two-year-old child had been "wandering around [the town] with just a diaper on, filthy, dehydrated," and without parental supervision.  Shortly thereafter, the Department filed a petition in dependency or neglect concerning the child.[1]  In conjunction with the petition, the Department filed an initial report indicating that starting in April 2023, it had received numerous referrals about the family.  The report also described the Department's concerns about the parents' protective capacities, substance use, and domestic violence.

---

[1] The child's two older half-siblings were initially named in the petition.  However, there was an order out of a pre-existing domestic relations case that allocated parental responsibilities of the middle child to her father and granted supervised visits to mother.  And the magistrate in this case granted an allocation of parental responsibilities for the oldest child to his paternal grandmother.  Thus, both half-siblings were dismissed from the case and are not part of this appeal.

¶ 3     The juvenile court granted temporary legal custody of the child to the Department, which placed him with his maternal grandmother. After mother admitted the allegations in the petition, the court adjudicated the child dependent or neglected. The court then adopted a treatment plan for mother that required her to cooperate with the Department, address her substance use issues, provide a safe and stable home environment, improve her parenting skills, and maintain a relationship with the child.

¶ 4     The Department later moved to terminate mother's parental rights. After a three-day hearing, and approximately one year after the case opened, the magistrate granted the termination motion. Specifically, the magistrate found that mother hadn't attended family time during the three months leading up to the hearing; mother's relationship with the child had "gotten more and more strained" during the proceedings; mother's living situation wasn't safe for the child; mother exhibited the same problems addressed in her treatment plan without adequate improvement; and mother couldn't meet the child's needs. The magistrate also found that an allocation of parental responsibilities (APR) to maternal

grandmother wasn't a viable less drastic alternative and that termination was in the child's best interests.

¶ 5    Pursuant to section 19-1-108(5.5), C.R.S. 2025, mother petitioned the juvenile court to review the magistrate's termination order.  Mother argued that the magistrate erroneously found that an APR to maternal grandmother was not a viable less drastic alternative to termination.  Specifically, she asserted that the finding was erroneous because termination based "solely" on a placement provider's unwillingness to accept an APR didn't "withstand [a] strict scrutiny analysis."  Noting that the magistrate's less drastic alternatives finding was supported by the record, the juvenile court disagreed with mother's argument and adopted the magistrate's termination order.

## II.    Less Drastic Alternatives

¶ 6    On appeal, mother contends that the juvenile court erred by adopting the magistrate's termination order.  Mother argues that (1) the magistrate's less drastic alternatives finding was erroneous because there was "little evidence that maintaining the legal parent-child relationship would be detrimental to the child" and (2) the magistrate's decision to terminate mother's parental rights

"unconstitutionally infringe[d] on mother's fundamental right to parent without a sufficient child protection justification." We discern no error.

### A. Applicable Law and Standard of Review

¶ 7  The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 8  The consideration and elimination of less drastic alternatives are implicit in the statutory criteria for termination. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 40. In considering less drastic alternatives, a juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. A juvenile court may also consider other factors, including whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's fitness to care for the

4

child's needs. *People in Interest of A.R.*, 2012 COA 195M, ¶ 38. And a juvenile court may also consider whether the placement provider favors adoption over an APR. *Z.M.*, ¶ 31.

¶ 9 For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the best option for the child. *A.M.*, ¶ 27. Long-term or permanent placement with a family member or foster family, short of termination, may not be a viable less drastic alternative if it doesn't provide adequate permanence that adoption would provide or otherwise meet a child's needs. *A.R.*, ¶ 41. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *A.M.*, ¶ 32.

¶ 10 In a case heard by a magistrate, the parties are bound by the magistrate's findings and recommendations, subject to a request for juvenile court review. § 19-1-108(3)(a.5); *People in Interest of L.B-H-P.*, 2021 COA 5, ¶ 9. Our review of a juvenile court's decision to adopt a magistrate's order is effectively a second layer of appellate review. *People in Interest of N.G.*, 2012 COA 131, ¶ 37.

¶ 11 We review a juvenile court's less drastic alternatives findings for clear error. *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Accordingly, when a juvenile court considers a less drastic alternative but instead finds that termination is in the child's best interests, we are bound to affirm the court's decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 12 The magistrate considered whether an APR to grandmother was a viable less drastic alternative but ultimately concluded that termination was in the child's best interests. Specifically, the magistrate found that an APR to grandmother wasn't a viable alternative because maternal grandmother preferred termination and adoption, and "forcing an APR" on a caretaker who doesn't prefer it "doesn't work very well." That finding was supported by the record — maternal grandmother testified that she didn't believe she could "productively co-parent" with mother because of mother's behaviors and that she didn't believe an APR was in the child's best interests because he needed a safe and stable environment without the future possibility of being "bounced in and out of the system."

¶ 13    Moreover, as noted by the juvenile court, the magistrate's finding that termination was in the child's best interests was supported by the caseworker's testimony. The caseworker — who testified as an expert in social work with an emphasis in child welfare, child safety, child education, and early childhood development — opined that termination was in the child's best interests because it would provide the sense of permanency he needed based on his young age, developmental needs, and inability to self-protect. The caseworker explained that while an APR might be stable "in the beginning," the child "could possibly have to go back" to mother at some point in the future, and leaving that possibility open wasn't in the child's best interests.

¶ 14    Mother's expert witness testified that, in general, children who experience termination of their parents' rights often experience "adoption-related loss" and "disenfranchised grief." The expert also testified that the risk of trauma was potentially greater when children in the same family have different permanency outcomes — for example, if one sibling's legal relationship with a parent is terminated while another sibling retains a legal relationship with that parent through an APR. Despite the expert witness's

7

testimony, the magistrate still found that termination was in the child's best interests. And we cannot reweigh the evidence. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 (it is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court); *see also In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15 (when the record supports the trial court's findings, its resolution of conflicting evidence is binding on review); *In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007) (an appellate court may presume that the trial court considered all of the evidence admitted).

¶ 15    We reject mother's argument that the juvenile court erred by declining to order an APR. According to mother, maternal grandmother didn't indicate that she would refuse to accept an APR or surrender custody of the child if the court had ordered an APR. But the fact that grandmother would not have relinquished custody if the court had ordered an APR didn't, on its own, render an APR a viable less drastic alternative. Although the magistrate didn't specifically find that an APR wasn't in the child's best interests, it explicitly found that termination was. Moreover, the magistrate stated that in making all of its findings, it gave primary

consideration to the physical, mental, and emotional needs of the child. And, as noted by the juvenile court, the record showed that termination, not an APR, was in the child's best interests not only because maternal grandmother preferred it, but also because of the child's need for long-term stability and permanency. *See Z.M.*, ¶¶ 29, 31; *A.R.*, ¶ 41.

¶ 16 We also reject mother's argument that the juvenile court violated her constitutional right to parent by declining to enter an APR to grandmother. Relying on *A.M.*, mother argues that a less drastic alternative doesn't have to be "the very best option for the child," and the child's needs would've been adequately met with an APR to maternal grandmother.

¶ 17 However, mother's reliance on *A.M.* is misplaced. In that case, the supreme court considered and rejected the exact argument mother makes here. *See A.M.*, ¶¶ 33-38. Specifically, the supreme court rejected an "adequacy" standard for determining whether a less drastic alternative is viable, stating that "[p]rimary consideration of the child's physical, mental, and emotional condition and needs requires more than a mere assessment of adequacy in order to satisfy the overall intent of the Children's

Code." *Id.* at ¶ 31. The supreme court acknowledged that parents have a constitutionally protected liberty interest in the care, custody, and management of their children. *Id.* at ¶ 35. But "once the trial court is persuaded that the State has established a parent's lack of fitness, the interests of the child and the parent diverge," and "the separate interests of the child outweigh the risk of erroneous termination of the parent-child relationship." *Id.* at ¶ 36. Thus, "the consideration and elimination of a less drastic alternative to termination on the ground that termination best serves the child's interests, where the statutory criteria for termination are otherwise established by clear and convincing evidence, satisfies due process." *Id.* at ¶ 37.

¶ 18 Here, mother doesn't challenge any of the magistrate's findings regarding the termination factors set forth in section 19-3-604(1)(c). And, as noted above, sufficient evidence supports the magistrate's finding that termination, not an APR, was in the child's best interests.

¶ 19 Accordingly, we agree with the juvenile court that the magistrate didn't err by finding that termination, rather than an APR, was in the child's best interests. *See B.H.*, ¶ 80.

## III.   Disposition

The judgment is affirmed.

JUDGE PAWAR and JUDGE SULLIVAN concur.